**POLI, MOON & ZANE, PLLC**
Michael N. Poli, (006431)
mpoli@pmzlaw.com
Lawrence R. Moon, (017000)
lmoon@pmzlaw.com
2999 North 44th Street, Suite 325
Phoenix, Arizona 85018
Telephone:   (602) 857-8180
Facsimile:    (602) 857-7333

**BONNETT, FAIRBOURN, FRIEDMAN**
     **& BALINT, P.C.**
Andrew S. Friedman (005425)
afriedman@bffb.com
Francis J. Balint, Jr. (007669)
fbalint@bffb.com
William F. King (023941)
bking@bffb.com
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| CHRIS ADAMSKI and JESSICA ADAMSKI, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>FARMERS INSURANCE GROUP, a foreign entity, FARMERS INSURANCE EXCHANGE, a foreign entity, FARMERS INSURANCE COMPANY OF ARIZONA, a foreign entity,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Chris and Jessica Adamski ("Plaintiffs"), by and through their undersigned attorneys, hereby bring this Complaint against Defendants Farmers Insurance Group, Farmers Insurance Exchange, and Farmers Insurance Company of Arizona

(collectively, "Farmers"), on behalf of themselves and all other similarly situated Arizona property owners insured under insurance policies indemnifying against property loss in which Farmers has inserted language purportedly authorizing it to exclude payment for general contractor overhead and profit ("GCOP") from any "Actual Cash Value" ("ACV") payment for covered losses to dwellings and related structures located in Arizona. Such exclusion is contrary to the express language of the policies, which includes GCOP in those states that (like Arizona) require GCOP to be included in ACV. *See Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 515, 144 P.3d 519, 529 (Ct. App. 2006), as corrected (Dec. 19, 2006). Such exclusion is also contrary to the law of Arizona, including under the statutorily mandated terms of the Arizona Standard Fire Policy, which requires that insurers ***include*** GCOP in their calculation and payment of ACV if the repairs for covered property loss are reasonably likely to require the services of a general contractor, ***regardless*** of whether such GCOP expenses are actually incurred by the insured.

## Parties

1.     Plaintiffs are, and at all times mentioned herein were, husband and wife, who reside and are domiciled in the State of Arizona. Plaintiffs are thus citizens of the State of Arizona.

2.     Defendant Farmers Insurance Group ("FIG") is a company incorporated under the laws of Nevada, with its principal place of business located in Los Angeles, California. FIG is thus a citizen of the States of Nevada and California.

3.     Defendant Farmers Insurance Exchange ("FIE") is organized under the laws of California, with its principal place of business in California. FIE is thus a citizen of the State of California.

4.     Defendant Farmers Insurance Company of Arizona ("FOA") is organized under the laws of Arizona, with its principal place of business in California. FOA is thus a citizen of the States of Arizona and California for purposes of diversity.

2

5.     FIE handles all claims submitted by policyholders under insurance policies issued by entities controlled by FIG, including FIE and FOA.

6.     Defendants FIG, FIE, and FOA are indistinguishable alter egos of each other. Indeed, California courts (where Farmers is based) have repeatedly recognized the "***unitary*** nature of the Farmers Group insurance business." *Tran v. Farmers Grp., Inc.*, 104 Cal. App.4th 1202, 1218-19 (2002) (emphasis added); *see also Delos v. Farmers Ins. Grp., Inc.*, 93 Cal.App.3d 642 (1979); *Bell v. Farmers Ins. Exchange*, 87 Cal.App.4th 805, 824 (2001).

## Jurisdiction

7.     Plaintiffs allege class claims on behalf of an Arizona class of persons owning property in Arizona insured by Farmers, which includes persons who are minimally diverse from Farmers and presents aggregate claims in excess of $5,000,000. This Court accordingly has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

8.     Venue is proper under 28 U.S.C. § 1391 because Plaintiffs reside in this District; Farmers maintain substantial operations in this District; thousands of Class Members either reside or did business with Farmers in this District; Farmers engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because Farmers entered into transactions and received substantial profits from consumers who reside in this District.

## General Allegations

9.     Farmers markets and issues standardized forms of real property insurance policies insuring residential properties located in Arizona (collectively, the "Policies").

10.     The Policies Farmers issued to Arizona residential property owners are standardized, containing the same or substantially the same provisions with respect to the settlement of losses.

11.    By Arizona statute, the Policies must conform to the statutorily mandated terms of the Arizona Standard Fire Policy. Specifically, A.R.S. § 20-1503(A) ("Section 1503") provides:

> No policy of fire insurance covering property located in [Arizona] shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of 1943.  ***Such policy is designated as the Arizona standard fire policy.***

(Emphasis added.)

12.    In *Tritschler*, the Arizona Court of Appeals ruled almost 15 years ago that, based on the purpose of such indemnity insurance and public policy, ACV payments made to an insured must include all costs "likely required" to be incurred in repairing or replacing the covered property, even if the insured decides not to repair or replace the respective property:

> [R]egardless of whether an insured hires a general contractor or completes his or her own repairs, the insured would still be entitled to what was contracted for in the insurance policy: the actual cash value of the loss, which may include a contractor's overhead and profit when a contractor would reasonably be used to make repairs. We cannot conclude that ***requiring*** an insurer to satisfy its obligations under an insurance contract violates indemnity principles.

213 Ariz. at 515, 144 P.3d at 529 (emphasis added).

13.    *Tritschler* does not stand alone.  In *Lukes v. American Family Mutual Ins. Co.*, No. 04-2022-PHX-JAT, 455 F. Supp. 2d 1010 (D. Ariz. 2006), the District Court similarly rejected the insurer's contention that, under Arizona law, it was only obligated to include sales tax in its calculation of the  actual cash value of a property loss if the insured actually incurs the expense of repairing or replacing the damaged property.  The *Lukes* Court ruled that its holding requiring inclusion of sales tax in the actual cash value calculation was "consistent with the fundamental purpose of a fire insurance policy which is to fully indemnify the insured." 455 F. Supp. 2d at 1016. *See also, e.g., Bond v. Am.*

*Family Mut. Ins. Co.*, No. CV-06-1249-PHX-DGC, 2008 WL 477873, at \*4 (D. Ariz. Feb. 19, 2008) ("Defendant's policy ***required*** it to include general contractor overhead and profit in the actual cash value payments it did make.") (emphasis added).

14.     A true and accurate copy of the standardized Farmers Policy as issued to Plaintiffs (the "Policy") (policy number redacted except for the last four digits)  is attached hereto as **Exhibit A**. In recognition that the Policy is subject to Arizona law, including A.R.S. § 20-1503, Farmers attached an Arizona "Amendatory Endorsement" to the Policy. **Exhibit A**, at Bates numbers 53-57.

15.     In Section I of the Policy, Farmers agrees to insure against loss (a) to Plaintiffs' dwelling ("Coverage A") and (b) to certain separate structures set apart from the dwelling on Plaintiffs' property ("Coverage B").  **Exhibit A**, at Bates number 17.

16.     In the Policy, under Property Conditions, at Section I.5.a of the Policy, Farmers describes the manner in which it will settle covered losses under Coverage A and Coverage B. **Exhibit A**, at Bates number 35.

17.     The Policy first provides that the covered loss "will be settled at reasonable and necessary replacement cost,"  including "the reasonable and necessary amount actually spent to repair or replace the specifically damaged component pat(s) of the dwelling or separate structure(s)." **Exhibit A**, at Bates number 35.

18.     Although the Policy thus purports to afford replacement cost value ("RCV") coverage, in Section I.6 of the Property Conditions, Farmers agrees to pay only on an ACV basis unless the Policyowner actually repairs or replaces the covered property within 365 days. **Exhibit A**, at Bates number 36-37. Since many Policyowners, like Plaintiffs, choose not to repair or replace the property loss, Farmers settles hundreds of claims annually in Arizona on an ACV basis.

19.     The phrase "actual cash value" is commonly understood to mean "money equal to the cost of replacing lost, stolen, or damaged property after depreciation." *Lukes*

*v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (quoting Merriam–Webster Online Dictionary (2006)).

20.     Consistent with this common understanding, the Policy defines "Actual cash value" as follows:

> 1. **Actual cash value** - means the reasonable replacement cost at time of loss less deduction for depreciation.
>
> We may depreciate all replacement costs, including, but not limited to, the costs of materials and labor.

**Exhibit A**, at Bates number 10. The Policy thus defines "actual cash value" as "replacement cost," and expressly excludes ***only*** depreciation. Nowhere in this definition of "actual cash value" does Farmers exclude GCOP from the calculation of actual cash value. Accordingly, a reasonable policyowner would understand that, being based on replacement cost, an ACV payment would exclude only depreciation while including GCOP as required by *Tritschler*.

21.     However, what Farmers gives in the definitional section, Farmers purports to take away elsewhere in the Policy.  Specifically, in the Property Conditions, Subsection I.5.e of the Policy ("Subsection E"), states that:  "Actual cash value … and replacement cost settlements will not include payment of … general contractor fees or charges … unless such fees, charges or costs are covered by this policy and if covered, until you actually incur and pay such fees, charges and costs."  **Exhibit A**, at Bates number 36.  Farmers in Subsection E thus attempts to ***contract around*** the holding in *Tritschler*.

22.     Farmers has systematically relied exclusively on the language of Subsection E to justify its exclusion of GCOP from the ACV payments made to Farmers Policyowners for covered losses to dwellings and separate structures located in Arizona.  Farmers is doing so in breach of the contract, in bad faith, and in violation of Arizona law, because the Policy itself unambiguously renders Subsection E inapplicable in Arizona given *Tritschler*'s holding that actual cash value includes GCOP.

23.     ***First***, as just noted, Subsection E conflicts with the Policy's very definition of ACV, rendering the Policy at least ambiguous as to subsequent purported exclusions of GCOP from ACV, requiring the Court to construe the language of the clause consistent with public policy considerations, and the fundamental, full indemnity purpose of the transaction as a whole. *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

24.     ***Second***, the Policy itself renders the purported exclusion in Subsection E inapplicable in Arizona. Specifically, the preceding subsection of the Policy, in the Policy Conditions, Section I.5.d ("Subsection D") -- entitled "General contractor fees or charges" -- expressly declares the exclusion of GCOP in Subsection E ***inapplicable*** where state law "requires that such fees and charges be paid with the actual cash value settlement;" to wit:

> General contractor fees or charges:
>
> > (1) will only be included as reasonable replacement costs if it is reasonably likely that the services of a general contractor will be required to manage, supervise and coordinate the repairs; and
> >
> > (2) will be paid as set forth in [Subsection E] that follows, ***unless the law of your state requires that such fees and changes be paid with the actual cash value settlement.***

**Exhibit A**, at Bates number 36 (emphasis added).

25.     By "your state," Subsection D is referring to the state in which the insured property is located. To eliminate any doubt, the Policy in its "General Conditions" Section expressly provides:

> 11. **What Law Will Apply**
>
> This policy is issued in accordance with the laws of the state in which the residence premises is located and covers property or risks principally located in that state. The laws of the state where the residence premises is located shall govern any and all claims or disputes in any way related to this policy.

Exhibit A, at Bates number 49.

26.     Arizona law thus governs the contractual rights of Plaintiffs and all other similarly situated policyowners insuring property in Arizona under the subject Policy form. And, under *Tritschler*, Arizona is a state that, in the words of Subsection D, "requires that such fees and changes be paid with the actual cash value settlement." *Tritschler*, 213 Ariz. at 515, 144 P.3d at 529; *accord, Bond*, 2008 WL 477873, at *4 ("Defendant's policy *required* it to include general contractor overhead and profit in the actual cash value payments it did make.") (emphasis added).

27.     Rather than contract *around Tritschler* in the Policy, therefore, Farmers by dint of Subsection D expressly contracted *into Tritschler*.

28.     At a minimum, Farmers' decision to issue Policies in Arizona containing such language renders its purported exclusion of GCOP at least ambiguous with respect to what the law of Arizona "requires," especially (a) in light of *Tritschler* and *Bond*, and (b) to an ordinary insured untrained in the law.  As such, the Policy should in the alternative be construed against Farmers' ambiguous attempt to exclude GCOP from ACV payments, based on the underlying purpose of the Policy, which is to provide full indemnity to the insured.

29.     *Third*, the purported evasion of any obligation under the Policy to exclude GCOP in ACV would be unenforceable under A.R.S. § 20-1503 as inconsistent with the well-established interpretation given the terms of the Arizona Standard Fire Policy, including specifically the phrase "actual cash value."   The Hon. Sherry K. Stephens last year ruled in *Klondyke Bullhead LLLP v. Mid-Century Insurance Company*, CV 2018-004741 (Superior Court of Arizona, Maricopa County) that doing so amounts to an unenforceable deviation from the Arizona Standard Fire Policy. *See* **Exhibit B**, at 4 ("The Court further finds [the Farmers policy endorsement purporting to do so] is inconsistent with Arizona law and is not enforceable.").[1]

---

[1] Farmers subsequently settled *Klondyke*, pursuant to which Judge Stephens' ruling was vacated by stipulation.

30. Contrary to the foregoing Arizona statutory law,[2] and despite its knowledge of *Tritschler* and *Lukes*, Farmers has purported to **evade** the prescribed provisions of the Arizona Standard Fire Policy with respect to the calculation of ACV based on the conflicting, ambiguous, and unlawful exclusionary language in Subsection E.

31. Farmer's insertion and interpretation of Subsection E is unreasonable, and inconsistent with the reasonable expectations that a lay policyowner would have after reading (a) the Policy definition of ACV, and (b) the preceding Subsection D, which is specifically entitled "General contractor fees or charges." Moreover, this argument applies equally to all Arizona claims and all perils.

32. Farmer's insertion and interpretation of Subsections E is furthermore inconsistent with the terms of the Arizona Standard Fire Policy, and unenforceable as such. Further, if Farmers wished to make limitations on GCOP applicable only to non-fire losses, it was incumbent on Farmers to explicitly state that, as required by A.R.S. § 20-1507(B), which it did not do.

33. Farmers' unreasonable and unlawful interpretation of Subsection E (which it knows conflicts with the Arizona Standard Policy and violates well-established Arizona law) has led to a systematic, bad-faith practice of undervaluing ACV claims, and thus to Farmers' paying millions of dollars less for ACV claims than its insureds are entitled to under the terms of their standardized Policies. In this regard, Farmers follows the established insurance industry practice that when GCOP is paid, this means an additional 20% is paid (10% for general contractor overhead and 10% for general contractor profit). Thus, whenever Farmers fails to pay GCOP with an ACV payment, it is saving 20% on that payment.

---

[2] Arizona law is hardly unique in this regard; many courts require actual cash value payments to include GCOP where (as here) the definition of ACV is initially tied to replacement cost. *See Mills v. Foremost Insurance Company*, 511 F.3d 1300 (11th Cir. 2008) (collecting cases).

## Plaintiffs' Facts

34. In November, 2019, Farmers issued the Policy to Plaintiffs, a Farmers' certified copy of which is attached as **Exhibit A**.

35. Plaintiffs suffered a covered property loss on January 19, 2020, during the period of coverage under the Policy.

36. In calculating the ACV of Plaintiffs' loss, Farmers by letter dated March 2, 2020, a true and accurate copy of which is attached as **Exhibit C**, deliberately excluded any allowance or payment for GCOP, despite acknowledging that "it appears a general contractor may be necessary to coordinate and supervise the [Plaintiffs' needed] repairs."

37. Farmers thus failed to pay Plaintiffs the full "actual cash value" of their loss as required under the Policy and Arizona law.

38. Plaintiffs do not dispute the amount of any deduction from their ACV payment; rather, Plaintiffs dispute Farmers' authority to exclude, pursuant to Subsection E or any other language of the Policy, GCOP expenses from its ACV payments in the first place. Therefore, Plaintiffs' claims are not subject to the appraisal process provided for in the Policy. *Bond*, 2008 WL 477873, at *4.

39. Plaintiffs have at all times fulfilled each of their obligations under the Policy, which remains in-force to this date.

40. Plaintiffs have incurred attorneys' fees and costs in connection with this action.

## Class Allegations

41. Plaintiffs bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following Classes:

> <u>Declaratory and Injunctive Class</u>: All Arizona property owners with an in-force Policy that includes the language of Subsections D and E.

<u>Damages Class</u>: All Arizona property owners for whom Farmers excluded GCOP from the ACV payment made under a Policy.

42. **Numerosity**. The members of each Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe there are currently hundreds, if not thousands, of members in each Class. The identity and precise number of Class members, though unknown to Plaintiffs, are reasonably and objectively ascertainable from Farmers' own records.

43. **Existence and Predominance of Common Questions of Law and Fact.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, (a) whether Farmers is contractually and legally authorized to withhold from ACV payments, GCOP and similar costs likely to be incurred in repairing or replacing the respective damaged property, (b) whether Farmers adopted a company policy or practice of excluding such items from its ACV payments, regardless of whether they were reasonably likely to be incurred by the insured, (c) whether Farmers did so through a knowing or reckless disregard of Arizona law, (d) whether Plaintiffs and the other members of the Declaratory and Injunctive Class are entitled to appropriate equitable remedies, including declaratory and injunctive relief requiring Farmers to comply with *Tritschler* and the Arizona Standard Fire Policy; and (e) whether Plaintiffs and the other members of the Damages Class are entitled to monetary and punitive damages. Further, the members of each Class can be efficiently determined either through the "three-trade" rule (*i.e.*, a general contractor is deemed necessary if three or more subcontractors or "trades" are needed for a repair), or through Farmers' own claims files.

44. *Typicality*. Plaintiffs' claims are typical of the claims of the members of both Classes because they are current Farmers Policyowners, and Farmers excluded CGOP from their ACV payment.

45.  ***Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel experienced in consumer class action litigation and Plaintiffs intend to prosecute this action vigorously on behalf of other similarly situated Farmers insureds. Plaintiffs have no interests adverse or antagonistic to those of the proposed Classes.

46.  ***Certification under Rule 23(b)(2).*** The Declaratory and Injunctive Class may be certified because Farmers has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole. Plaintiffs seek permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Farmers from engaging in the systematic misconduct described above, and requiring it to provide full equitable relief to Plaintiff and Class members.  Unless a Class-wide injunction is issued, Farmers will continue to commit the violations alleged above, and the members of the Classes and other Farmers policyholders will continue to be injured.

47.  ***Superiority under Rule 23(b)(3)***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy with respect to the Damages Class. The damages or other financial detriment suffered by individual Damages Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Farmers.  It would thus be virtually impossible for Plaintiffs and the Damages Class members, on an individual basis, to obtain cost-effective redress for the wrongs done to them.  Furthermore, even if damages Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these

issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## Count One

### (Breach of Express Contract)

48.     Plaintiffs repeat and reallege all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief.

49.     Under Arizona law, Farmers was and is under the Policy obligated to include GCOP in ACV payments made on covered losses, regardless of whether such costs were actually incurred and paid by its insureds.

50.     The purported exclusion of GCOP in Subsection E is expressly rendered inapplicable in Subsection D, thus preserving the rights of Plaintiffs and other similarly situated policyowners in Arizona to the payment of GCOP under *Tritschler*.

51.     Alternatively, the purported exclusion of GCOP in Subsection E is ambiguous given the (a) Policy definition of "actual cash value," (b) the express terms of Subsection D, (c) the holding in *Tritschler*, and (d) the reasonable expectations of Plaintiffs and the other members of the Classes.

52.     Alternatively, the purported exclusion of GCOP in Subsection E is foreclosed by and unenforceable under A.R.S. § 20-1503, as held in *Klondyke*.

53.     Farmers thus breached the Policy when it failed to include GCOP in ACV payments to Plaintiffs and the other members of the Damages Class.

54.     Plaintiffs and the other members of the Damages Class were injured by Farmers' breaches, in an amount to be proven at trial.

55.     Appropriate additional equitable remedies may include, among other things, ordering a self-audit similar to that ordered by the Arizona Department of Insurance in 2011 when American Family Insurance Company had similarly failed to include transaction privilege taxes in settling property loss claims.

56.    This matter arises out of contract, such that Plaintiffs and the Classes are eligible for and entitled to an award of their attorneys' fees under A.R.S. § 12-134.01.

## Count Two

### (Breach of Contractual Implied Obligation of Good Faith)

57.    Plaintiffs repeat and reallege all allegations contained in the paragraphs above as if set forth separately in this Claim for Relief.

58.    "In Arizona, insurance contracts include an implied covenant of 'good faith and fair dealing,' whereby each party is 'bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship.'" *Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App.1997) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)).

59.    In cases (such as this) involving first-party coverage, the insurer must "play fairly with its insured." *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 20 P.3d 1158 (App. 2001) (citing *Rawlings*, 151 Ariz. at 154, 726 P.2d at 570). The insurer must "give equal consideration in handling the claim, and do so in fairness and honesty." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52 n. 3, 13 P.3d 1169 n. 3 (2000)).

60.    The duty of good faith also includes an obligation to inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading. *See Nardelli v. Metropolitan Group Property and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012) (citing, *inter alia*, *Rawlings*, 151 Ariz. at 156–57, 726 P.2d at 572–73 (1986)); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 729 P.2d 267, 275–77 (1987) (internal quotation omitted) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy")).

61.    Arizona law also imposes a duty of a quasi-fiduciary nature on an insurance company when it receives a demand for payment under a policy, including a duty of full

candor and a duty to give equal consideration to its interests and those of the insured before paying out policy proceeds. *See Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 507, 838 P .2d 1265, 1268 (1992) ("[A]n insurance company's duty of good faith means that 'an insurer must deal fairly with an insured, giving equal consideration in all matters to the insureds interest.'") (quoting *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 386, 715 P.2d 1133, 1136 (1986)).

62.     The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings, supra,* 151 Ariz. at 160, 726 P.2d at 576.

63.     Farmers acted objectively and subjectively unreasonably in including the purported exclusion of GCOP in its Policies, which is contradicted by both the Policy's definition of "actual cash value," and the Policies' express statement that the purported exclusion does not apply where " the law of your state requires that such fees and charges be paid with the actual cash value settlement." *Wood*, 2012 WL 2798761, at *2-5; *see also Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 758 P.2d 1313, 1325 (Ariz. 1988) (observing that intent could be inferred from evidence that the insurer "sought its own legitimate objective-settlement for as little as possible-by improper means"); *see generally Zilisch,*

995 P.2d at 280 (whether insurer possessed wrongful intent is question for the jury). Farmers' alleged misconduct is not the result of an honest mistake, mere oversight, or carelessness.

64. Farmers' objective and subjective decision to exclude GCOP, in which no consideration at all was given to the interests of the insureds as required by Arizona law, constitutes a breach of Farmers' obligations of investigation, information, equal consideration, and indemnity.

65. Farmers breached the implied obligation of good faith and fair dealing when it deliberately avoided including GCOP in its ACV payments to Plaintiffs and the other members of the Damages Class despite its awareness of *Tritschler*, *Lukes*, and the statutory terms of the Arizona Standard Fire Policy. Farmers knew or should have known that its failure to make full ACV payments was improper and that it was therefore acting in bad faith when it failed to pay the full ACV payments owed to its insureds.

66. Plaintiffs and the other members of the Damages Class were injured by Farmers' breaches, in an amount to be proven at trial.

67. To recover punitive damages, the plaintiff must "show 'something more' than the conduct necessary to establish the tort" of bad faith. *Thompson v. Better–Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 556, 832 P.2d 203, 209 (1992) (quoting *Rawlings*, 151 Ariz. at 161, 726 P.2d at 577). Arizona courts have developed a shorthand reference for this "something more," requiring the plaintiff to "prove that defendant's evil hand was guided by an evil mind." *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578. The requisite "evil mind" may be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.*

68. Farmers' bad faith conduct warrants the imposition of punitive damages under Arizona law. *Wood*, 2012 WL 2798761 at *6.

## Count Three

### (Declaratory and Injunctive Relief)

69.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above as if fully set forth herein.

70.     An actual controversy has arisen and now exists between Plaintiffs and the members of the Declaratory and Injunctive Class, on the one hand, and Farmers, on the other hand, as to the proper interpretation and enforceability of Subsection E inserted by Farmers' into the Policy form in an apparent attempt to contract around the requirements of Arizona law under *Tritschler*.

71.     Under the circumstances, Plaintiffs and the members of the Declaratory and Injunctive Class are entitled to a declaration (a) that Arizona law does not permit Farmers to unilaterally exclude GCOP from its ACV payments, and (b) providing for appropriate equitable relief to Plaintiffs and other members of the Declaratory and Injunctive Class.

### Prayer

WHEREFORE, Plaintiffs pray for a judgment:

A       certifying the Classes as requested herein;

B       awarding Plaintiffs and the other members of the Declaratory and Injunctive Class declaratory, injunctive or other equitable relief;

C       awarding Plaintiffs and other members of the Damages Class equitable, compensatory, and exemplary relief in a form and amount to be determined at trial;

D       awarding Plaintiffs and members of both Classes their attorneys' fees and costs; and

E       providing Plaintiffs and members of both Classes with such further and other relief as deemed just and proper by the Court.

### Jury Demand

Plaintiffs demand a jury trial of all issues triable by right by jury.

Dated this 16th day of September, 2020.

POLI, MOON & ZANE, PLLC

/s/ Michael N. Poli
Michael N. Poli, (006431)
Lawrence R. Moon, (017000)
2999 North 44th Street, Suite 325
Phoenix, Arizona 85018
mpoli@pmzlaw.com
lmoon@pmzlaw.com
Telephone: (602) 857-8180
Facsimile: (602) 857-7333

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, PC

/s/ Francis J. Balint, Jr.
Andrew S. Friedman (005425)
Francis J. Balint, Jr. (007669)
William F. King (023941)
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
afriedman@bffb.com
fbalint@bffb.com
bking@bffb.com
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Attorneys for Plaintiffs*